**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Simon RABAN, Appellant.**

Superior Court of Pennsylvania.

Argued June 22, 2011.

Filed Oct. 5, 2011.

Reargument Denied Dec. 12, 2011.

---

8. Although Appellant's conviction for first-degree murder in a period in which the Court also was required to undertake proportionality review, *see* 42 Pa.C.S. § 9711(h)(3)(iii) (repealed), the requirement for such review was eliminated prior to the trial court's imposition of Appellant's death sentence. *See Commonwealth v. Laird*, 605 Pa. 137, 185, 988 A.2d 618, 647 (2010) (explaining that "the 'operative event' that triggers entitlement to proportionality review under Pennsylvania's capital sentencing scheme is the imposition of a death sentence, not the offense itself").

9. We realize that the aggravating circumstance pertaining to Appellant's conviction for the murder of Mr. Slafman was undermined by the later award of relief in the form of a new trial, followed by an acquittal. Nevertheless, in a situation where a jury has found at least one extant aggravator and no mitigation, a verdict of death is required in any event. *See* 42 Pa.C.S. § 9711(c)(1)(iv); *see, e.g., Commonwealth v. King*, 554 Pa. 331, 374, 721 A.2d 763, 784–85 (1998).

James Cunilio, Bryn Mawr, for appellant.

Alexander Gosfield, Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., GANTMAN, and OTT, JJ.

OPINION BY STEVENS, P.J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Chester County, which, sitting as fact-finder in Appellant's bench trial, found Appellant guilty of violating Section 305(a)(1) of the Dog Law,[1] a misdemeanor of the third degree. Sentenced to six months of non-reporting probation and a $500.00 fine, Appellant herein contends that: (1) the court erroneously interpreted Section 459–305(a)(1) to have no *mens rea* requirement; and (2) conviction was unjustified as the dog attack in question was *de minimis* as defined in 18 Pa.C.S.A. § 312. We affirm.

---

1. Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. § 459–305.

The court aptly provides the factual and procedural history as follows:

This charge arises from an incident which occurred on July 7, 2009 at approximately 7:15 p.m. when Defendant's [hereinafter "Appellant"] dog, a black Giant Schnauzer named "Muncy," left Appellant's premises, crossed Barrington Road and attacked another dog, a Bernese Mountain dog named "Hubble," owned by Austin Alvin. Appellant's dog was not restrained with a leash or an electric fence collar. Alvin was walking his dog on the opposite side of the street in front of Appellant's residence when Appellant's dog ran directly toward Alvin and "Hubble." "Muncy's" mouth grabbed "Hubble" by the neck. Mr. Alvin reported that "Hubble" limped after the incident but did not sustain any long term injury. A neighbor, George Sawicki, observed the incident. Mr. Sawicki observed Appellant put an electric fence collar on Muncy's neck approximately 10 or 15 minutes after the incident occurred.

The police were called and Officer Matthew Fredericks of West Vincent Township Police arrived. Officer Fredericks filed a citation against Appellant after speaking to Appellant, Mr. Sawicki, and Mr. Alvin. Appellant told the Officer that his dog attacked Alvin's dog.

Appellant had previously been cited for and convicted of violating 3 P.S. § 459–305(a)(1) on January 21, 2009 for failing to properly confine his dog.

\* \* \*

At [Appellant's bench trial of August 6, 2010], the Commonwealth presented the testimony of Austin Alvin, George Sawicki and Matthew Fredericks. Appellant took the stand and also presented the testimony of his wife, Marina Raban. [As noted *supra*, the court convicted Appellant on the Confinement of Dog charge and sentenced him to six months' probation and a $500.00 fine.] Appellant filed a timely Notice of Appeal on November 10, 2010 and a Concise Statement of Matters Complained of on Appeal on January 10, 2011.

Trial Court Opinion dated February 2, 2011.

Appellant raises the following three issues for our review:

I.  DID THE LOWER COURT PROPERLY FIND THAT 3 P.S. § 459–305(a)(1) IMPOSES ABSOLUTE OR STRICT LIABILITY WHEN THERE WAS NO INDICATION IN THE STATUTE THAT A *MENS REA* REQUIREMENT WAS NOT NECESSARY FOR ITS VIOLATION AND WHEN 3 P.S. § 459–305(a)(3), PART OF THE SAME STATUTE, REQUIRES THAT A DOG TO BE [SIC] "UNDER THE REASONABLE CONTROL OF SOME PERSON" WHEN ENGAGED IN HUNTING, EXHIBITION, PERFORMANCE AND FIELD TRAINING[?]

II. WAS THERE SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT FOR FAILING TO CONFINE A DOG WITHIN THE PREMISES OF THE OWNER'S PROPERTY WHEN THERE [WAS] NO CONDUCT ON THE PART OF THE APPELLANT THAT CAUSED THE DOG TO BE UNCONFINED AND WHEN IT WAS APPELLANT'S WIFE WHO ALLOWED THE DOG OUTSIDE THEIR HOME[?]

III. SHOULD THE APPELLANT HAVE BEEN FOUND NOT GUILTY BECAUSE THE IN-

CURSION OF THE DOG CONSTITUTED A [ ] *DE MINIMIS* INFRACTION PURSUANT TO 18 Pa.C.S.A. § 312[?]

Brief for Appellant at 4.

As Appellant's three claims state challenges to the sufficiency of the evidence, we set forth the standard of review applicable to sufficiency claims:

> Our standard of review for a challenge to the sufficiency of the evidence is well settled. We must view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom. Additionally, it is not the role of an appellate court to weigh the evidence or to substitute our judgment for that of the fact-finder. It is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence. We will reverse the resulting verdict on the basis of legal insufficiency only where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture.

*Commonwealth v. Flamer*, 848 A.2d 951, 952 –953 (Pa.Super.2004).

▮ Initially, we observe that Section 305 of the Dog Law, 3 P.S. § 459–305 provides:

> It shall be unlawful for the owner or keeper of any dog to fail to keep at all times such dog either:
>
> (1) confined within the premises of the owner;
>
> (2) firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured; or

(3) under the reasonable control of some person, or when engaged in lawful hunting, exhibition or field training.

3 P.S. § 459–305. Appellant contends that the court erred in ruling that a conviction under subsection 305(a)(1) does not require proof of scienter. We disagree.

In *Baehr v. Commonwealth ex rel. Lower Merion Township*, 51 Pa.Cmwlth. 241, 414 A.2d 415 (1980), the Commonwealth Court[2] reviewed the Dog Law's former Section 702, the identically-worded predecessor to Section 305(a)(1), and determined that "[a]n examination of the Dog Law makes it clear that scienter is not a necessary element of the violation." *Id.* at 417. Inferring the predominating public safety purpose from the language of former Section 702, the Court found it "speaks in terms of strict liability," and concluded that "the difficulty of establishing culpability in such cases would surely frustrate the purpose of Section 702." *Id.*

▮ A subsequent decision of this Court interpreting current Section 305(a)(1) invoked *Baehr* and its recognition of a paramount public safety purpose within the statute:

> When we interpret a statute, we do so with the goal in mind of ascertaining and giving effect to the intent of the General Assembly underlying the enactment of the statute. 1 Pa.C.S.A. § 1921(a). In ascertaining the legislative intent of a particular statute, it is presumed that the legislature did not intend a result that is absurd or unreasonable. Moreover, it is presumed that the legislature intends to favor the public interest as opposed to any private interest. [ ] With these basic tenets in mind, we turn our attention to the Dog Law.

---

**2.** While decisions of the Commonwealth Court are not binding upon this panel, *Baehr* has influenced a prior decision of this Court upholding a conviction under Section 305(a)(1), see *infra*, and we continue to find it instructive in deciding the case *sub judice*.

The title of 3 P.S. § 459–305 concisely explains that the principle purpose of the section is the "confinement of dogs." In enacting this section of the Dog Law, the legislature intended to require dog owners to prevent their dogs from running at large. *See Miller v. Hurst,* 302 Pa.Super. 235, 448 A.2d 614 (1982). The protection of the public's health and safety are attained when dogs are safely secured or accompanied when not so confined. *See Baehr v. Commonwealth ex rel. Lower Merion Township,* 51 Pa. Cmwlth. 241, 414 A.2d 415 (1980).

*Commonwealth v. Glumac,* 717 A.2d 572, 573 –574 (Pa.Super.1998) (citations and quotation marks omitted).

In *Glumac,* the dog-owner/appellant was convicted under Section 305(a) when his dog attacked a neighbor exercising her right of way on a private residential roadway owned by dog-owner/appellant. On appeal, the dog-owner/appellant argued that his dog was clearly "confined within the premises of the owner" as required by the statute because he owned the roadway in question. We rejected this argument as contrary to the broad public safety purpose of the Dog Law.

> In contradiction to Appellant's theory, we interpret the term "premises of the owner," to which a dog must be confined under 3 P.S. § 459–305(1), to be that portion of the owner's property which is within the owner's control, i.e. not open to the public. Consequently, any portion of an owner's property which is open to the public, in this case a right of way, is not within the owner's control and therefore not the owner's premises under the meaning of this section.

While Appellant still owns the land upon which the roadway lies, he has no control regarding who passes over the land to access the five homes served by the right of way. *Here, to allow Appellant's dog to roam the roadway, which accesses five homes and may be traveled by an unsuspecting member of the public, would not allow the purpose of the Legislature to be met.*

*Id.* at 574 (emphasis added).

As we did in *Glumac,* we agree with the rationale of *Baehr* that the clear legislative intent of Section 305(a)(1) is to favor the important public interest in preventing roving dogs. This public interest is manifest in the plain language of the statute, which states it shall be *unlawful to fail to keep at all times* one's dog within the confines of one's premises. The mandate to confine a dog is thus stated absolutely and not in terms of reasonable care, which standard, as appreciated in *Baehr,* would involve difficulties in ascertaining culpability and thus frustrate the legislative intent behind Section 305(a)(1). Had the legislature intended Section 305(a)(1) to condition culpability on the failure to make reasonable efforts at confinement, it could have easily stated so. As written, however, Section 305(a) unequivocally proscribes the failure to confine one's dog to one's premises, period. Accordingly, we reject Appellant's argument interpreting a scienter element in Section 305(a)(1).[3]

■ Appellant's remaining issue states that his dog's incursion represented a *de minimis* infraction so as to require reversal. We disagree. The testimony as

---

**3.** We likewise reject Appellant's argument that the evidence insufficiently establishes that he caused his dog to be unconfined and that criminal responsibility is attributable solely to his wife. The trial court found that Appellant was the dog's owner for purposes of the Dog Law, and Appellant was working in his home office when the dog failed to remain confined to the premises. We agree with the trial court's reasoning in this regard. Trial Court Opinion filed 2/2/11 at 4–5.

found credible by the trial court established that Appellant's Giant Schnauzer charged across the street and attacked Alvin's dog, taking his throat within its jaws in the process. This attack lasted approximately 30 seconds until Alvin could extricate his dog and chase Appellant's dog back to his home. Alvin testified that his dog was limping immediately after the attack. The attack described by this evidence is hardly *de minimis,* and, as acknowledged by the trial court, represents precisely the type of harm Section 305(a)(1) was designed to prevent.

Judgment of sentence affirmed.