**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Eileen MAYFIELD, Appellee.**

Supreme Court of Pennsylvania.

Argued May 13, 2003.

Decided Sept. 24, 2003.

Mary Macneil Killinger, Patricia Eileen Coonahan, Bruce C. Castor, Jr., Norristown, for the Com, of PA, Appellant.

Jeffrey Allen Sigman, Feasterville, for Eileen Mayfield, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

JUSTICE EAKIN.

This case presents the question whether the Institutional Sexual Assault Statute, 18 Pa.C.S. § 3124.2, is unconstitutional. We hold it is not.

Appellee was a corrections officer at the Montgomery County Correctional Facility when she allegedly engaged in sexual acts with three inmates, including performing oral sex on an inmate, rubbing her buttocks on an inmate's groin area, and grabbing an inmate's buttocks. Appellee was charged with three counts of institutional sexual assault, 18 Pa.C.S. § 3124.2. She moved to quash the bills of information and have the charges dismissed. The trial court granted the motion after finding § 3124.2 unconstitutionally vague, overbroad, and violative of due process for lacking an express *mens rea* requirement. The Commonwealth appealed directly to this Court pursuant to 42 Pa.C.S. § 722(7).[1]

The Institutional Sexual Assault Statute provides:

(a) General rule.—Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault) and 3125 (relating to aggra-

---

1. 42 Pa.C.S. § 722(7) provides:
 The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:
 * * *
 (7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.

vated indecent assault), a person who is an employee or agent of the Department of Corrections or a county correctional authority, youth development center, youth forestry camp, State or county juvenile detention facility, other licensed residential facility serving children and youth, or mental health or mental retardation facility or institution commits a felony of the third degree when that person engages in sexual intercourse, deviate sexual intercourse or indecent contact with an inmate, detainee, patient or resident.

(b) Definition.—As used in this section, the term "agent" means a person who is assigned to work in a State or county correctional or juvenile detention facility, a youth development center, youth forestry camp, other licensed residential facility serving children and youth, or mental health or mental retardation facility or institution who is employed by any State or county agency or any person employed by an entity providing contract services to the agency.

18 Pa.C.S. § 3124.2.[2]

■■■■ "[W]e begin our analysis by recognizing that there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute." *Common-*

*wealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 165 (1996) (citations omitted). As a matter of statutory construction, we presume "the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth." 1 Pa.C.S. § 1922(3). A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality. *Commonwealth v. Hendrickson,* 555 Pa. 277, 724 A.2d 315, 317 (1999).

I.

The trial court concluded § 3124.2 was unconstitutionally vague. The court perceived manifold ambiguities in the statute: "It does not sufficiently define vital terms such as inmate, employee, agent or facility." Trial Court Opinion, 2/21/02, at 4. "[It] does not require that the assault occur in a facility, never mind the relevant facility; it could occur anywhere off-site." Id. "Nor . . . does our statute require that the employee be on-duty, acting in his/her official role or capacity when the prohibited conduct occurs." Id. In the trial court's view, these ambiguities raised worrisome questions:

The statute does not indicate whether the employee must have official and/or direct contact with the inmates, or whether he/she could be an administra-

---

2. Two of the three counts against appellee fall under the prior version of the statute, which provided:

(a) General Rule.—A person who is an employee or agent of the Department of Corrections or county correctional authority commits a misdemeanor of the first degree if the person engages in sexual intercourse, deviate sexual intercourse or indecent contact with an inmate.

(b) Definition.—As used in this section, the term "agent" means a person who is assigned to work in a State or county correctional facility who is employed by any State

agency or any person employed by an entity providing contract services to the Department of Corrections or county correctional authority.

18 Pa.C.S. § 3124.2 (amended 2000). The trial court stated, however, "the reasoning herein applies equally to the new statute." Trial Court Opinion, 2/21/02, at 1 n. 1. Furthermore, the parties address their arguments to the constitutionality of the amended version. *See* Brief for Appellant, at 7; Brief for Appellee, at 10–12. We address the constitutionality of the statute as amended.

tor or painting sub-contractor. The statute is nebulous with regard to sexual encounters between employee/agents of one county and inmates of another. The statute gives no guidance as to whether there are exceptions for married couples who fall within the categories. In short, the statute is unclear as to time, place, perpetrator and victim; it is vague.

Id., at 4–5.

■■■ With these alleged defects in mind, we turn to the constitutional vagueness standard:

> [T]he terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. . . . [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244, 246 (1976) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339, 1342 (1983) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct. *Heinbaugh*, at 246.

■■■ Appellee contends the terms "inmate" and "employee" are undefined, and thus unconstitutionally vague. She also argues § 3124.2 is infirm for not specifying whether "inmate" includes those on work release or furlough, and for failing to indicate whether an "employee" must be on duty or employed at the same facility where the "inmate" is housed. In support of this argument, appellee hypothesizes a number of fanciful scenarios in which § 3124.2 would trap the unwitting. For example: "Conceivably a prison janitor may be solicited for and have sex with a mental patient who has escaped from housing in another county or state or country, without knowledge of that status and be convicted under this statute."[3] Brief for Appellee, at 12. Whether or not these law school hypotheticals are plausible, they are entirely beside the point. "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."[4] *Heinbaugh*, at 245 (quoting *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975)). Therefore, we will address the alleged vagueness of § 3124.2 as it applies to this case.

Applied to appellee's conduct, the statute could not be clearer. In pertinent part, § 3124.2 provides, "[A] person who is an employee or agent of . . . a county correctional authority . . . commits a felony of the third degree when that person engages in sexual intercourse . . . or indecent contact with an inmate[.]" 18 Pa.C.S. § 3124.2(a). The statute's plain language reveals the intent of the General Assem-

---

**3.** A central feature of appellee's scenarios is the assumption § 3124.2 is a strict liability statute. As we discuss in Part III, it is not.

**4.** While appellee urges her conduct implicates the First Amendment, it is more properly viewed under the Due Process Clause, as we discuss in Part II.

bly: to prohibit sexual contact between correctional staff and inmates. It is sufficiently definite "that ordinary people can understand what conduct is prohibited," *Mikulan*, at 1342, and is not "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application[.]" *Heinbaugh*, at 246. The statute provides reasonable standards for correctional personnel to gauge their conduct—namely, sexual contact with inmates is forbidden. Whatever latent ambiguities may lurk in the terms "inmate" or "employee" are not implicated here. Appellee was a county corrections officer; she was unquestionably an "employee" of a county correctional facility. The persons with whom she allegedly had sexual contact were indisputably "inmates" at that facility. Appellee's alleged conduct is precisely what the General Assembly intended to proscribe when it enacted § 3124.2, which is not unconstitutionally vague.

## II.

The trial court concluded § 3124.2 was unconstitutionally overbroad because it punishes conduct protected by the First Amendment.[5] The court reasoned:

Voluntary sexual acts—deviate, adulterous, or otherwise, are protected by the First Amendment. The statute at issue punishes such acts of privacy. It punishes consensual sex between individuals who have minimal, or no, direct official contact with facility inmates. Under the statute, the perpetrator could be an office worker, a cleaning person, a cook, any sort of sub-contractor, or an off-duty employee or agent of one of the listed facilities who engages in off-site consensual sexual activity with an inmate on work release or furlough from their own, or another county.

Trial Court Opinion, 2/21/02, at 5. Appellee contends the court's hypothetical scenarios are relevant to overbreadth analysis because statutes implicating First Amendment rights are assessed not only as applied but also as to other potential situations. *See NAACP v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) ("[I]n appraising a statute's inhibitory effect upon such [First Amendment] rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar."). Thus, a threshold matter is whether § 3124.2 proscribes conduct protected by the First Amendment.

Appellee urges § 3124.2 violates the rights of association and privacy. In support of this claim, she cites a number of United States Supreme Court decisions recognizing a constitutional right to privacy in limited circumstances—*see, e.g., Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (statute prohibiting possession of obscene materials in home violates First Amendment); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (antimiscegenation statute violates Equal Protection and Due Process Clauses because freedom to marry is fundamental); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (statute prohibiting use of contraceptives by married persons violates fundamental privacy interest inherent in marital relationship); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655

---

**5.** The Commonwealth did not raise the overbreadth issue in its brief to this Court, and ordinarily this omission would constitute a waiver of that issue. *See* Pa.R.A.P. 2116(a). This Court will not depend on the parties to preserve those issues upon which the trial court expressly relied in holding the statute unconstitutional. A statute found unconstitutional will *not* be left in that state merely because of neglect by the parties.

(1942) (involuntary sterilization is subject to strict scrutiny under Equal Protection Clause because marriage and procreation are fundamental rights); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (statute prohibiting teaching foreign languages to schoolchildren violates Due Process Clause because right of parents and teachers to educate is fundamental liberty interest)—none of which remotely suggest correctional staff have a First Amendment right to engage in sexual contact with inmates.

The most recent precedent is *Lawrence v. Texas*, No. 020–102, 123 S.Ct. 2472, 2003 U.S. Lexis 5013 (U.S. June 26, 2003), in which the United States Supreme Court invalidated, on due process grounds, a Texas statute prohibiting deviate sexual intercourse between individuals of the same sex. *Lawrence* is instructive, in that the United States Supreme Court surveyed its privacy decisions and summarized them as follows: "[O]ur laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Id.*, at 123 S.Ct. at 2474, *28. In regard to the regulation of private sexual conduct between consenting adults in the home, the Court concluded that decisions by such persons "concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *Id.*, 123 S.Ct. at 2475, at *35 (quoting *Bowers v. Hardwick*, 478 U.S. 186, 216, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (Stevens, J., dissenting)). That being so, the Court held private sexual conduct between consenting adults was beyond the ability of the government to regulate. *Id.*, at 123 S.Ct. at 2475, *36.

 Significantly, *Lawrence* located this right in the Due Process Clause rather than the First Amendment. Further-

more, sexual contact between correctional staff and inmates cannot plausibly be categorized as expressive conduct warranting First Amendment protection. We can conceive of no set of circumstances in which § 3124.2 would infringe on constitutionally protected expression. By its terms, the statute prohibits correctional personnel from "engag[ing] in sexual intercourse, deviate sexual intercourse or indecent contact with an inmate, detainee, patient or resident." 18 Pa.C.S. § 3124.2(a). On its face, the statute proscribes pure conduct. However, expressive conduct can constitute protected expression where "[a]n intent to convey a particularized message [is] present, and in the surrounding circumstances the likelihood [is] great that the message would be understood by those who view[ ] it." *Spence v. Washington*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974). Here, appellee's alleged conduct—performing oral sex on an inmate, groping an inmate's buttocks, and rubbing her buttocks on an inmate's groin—was not calculated to convey a particularized message of any sort. It is therefore unnecessary to address how any who might have viewed these alleged acts interpreted them. *Cf. Pap's A.M. v. City of Erie*, 571 Pa. 375, 812 A.2d 591, 603–04 (2002) (nude dancing is expressive conduct that falls within First Amendment).

Appellee's alleged acts, moreover, are emblematic of the conduct prohibited by § 3124.2, and we can envision no circumstances under which conduct proscribed by the statute would be undertaken to convey a particularized message. In short, appellee's alleged actions amount to pure conduct, not expressive activity protected by the First Amendment. Having concluded § 3124.2 does not implicate First Amendment concerns, we decline to address the trial court's hypothetical scenarios; rather,

we will address the alleged overbreadth of § 3124.2 as it applies to appellee's conduct.

The constitutional overbreadth standard is as follows:

A statute is overbroad if by its reach it punishes a substantial amount of constitutionally-protected conduct. If the overbreadth of the statute is substantial, judged in relation to its legitimate sweep, it may not be enforced against anyone until it is narrowed to reach only unprotected activity. The function of overbreadth adjudication, however, attenuates as the prohibited behavior *moves from pure speech towards conduct*, where the conduct falls within the scope of otherwise valid criminal laws that reflect legitimate state interests.

*Hendrickson*, at 317–18 (citations omitted).

Although appellee characterizes this issue as a First Amendment claim, as the forgoing discussion suggests, her argument really implicates freedom of association, which is a liberty interest protected by the Due Process Clause.[6] Even viewed through the lens of due process, appellee's overbreadth argument fails. While *Lawrence* clearly establishes a due process right of consenting adults to engage in private sexual conduct free from governmental interference, the United States Supreme Court was careful to qualify the reach of its holding: "The present case does not involve minors. *It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public con-*

duct or prostitution." *Lawrence*, at *36 (emphasis added). Sexual contact between correctional staff and inmates is obviously rife with the possibility of coercion, both subtle and overt, given the extensive power guards exercise over inmates. Furthermore, public correctional institutions can in no way be likened to that "most private of places, the home." *Lawrence*, at *16. While the state interest in regulating private consensual sex between adults is low, *see Commonwealth v. Bonadio*, 490 Pa. 91, 415 A.2d 47, 50 (1980) (finding no state interest sufficient to justify prohibition of voluntary deviate sexual intercourse), in the setting of a correctional institution the calculus of interests is fundamentally different.

In such a setting, the state interest in maintaining institutional order and discipline is high, and the interest of the individual is necessarily limited. The United States Supreme Court noted this essential difference in *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974):

We have recognized, however, that the relationship of state prisoners and the state officers who supervise their confinement is far more intimate than that of a State and a private citizen, and that the internal problems of state prisons involve issues ... peculiarly within state authority and expertise.

*Id.*, at 825–26, 94 S.Ct. 2800 (quotation marks omitted). The Commonwealth has an undeniable interest in ensuring the "relationship of state prisoners and the state

---

**6.** This is not to say the two are unrelated. Both the First and Fourteenth Amendments are implicated in cases where freedom of association is asserted for purposes of group expressive activity. *See, e.g., NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ("[T]his Court has more than once ... remark[ed] upon the close nexus between the freedoms of speech and as-

sembly. It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.") (citations omitted). As we have said, however, this case does not involve association for expressive purposes.

officers who supervise their confinement," *id.*, as well as institutional order and discipline, is not undermined by sexual contact, consensual or otherwise. Therefore, we conclude § 3124.2 does not "punish[ ] a substantial amount of constitutionally-protected conduct." *Hendrickson*, at 317–18. Rather, the statute regulates "conduct [that] falls within the scope of otherwise valid criminal laws that reflect legitimate state interests." *Id.*, at 318. Section 3124.2 is not unconstitutionally overbroad.

### III.

 The trial court concluded § 3124.2 violates due process because it lacks an express *mens rea* requirement. The trial court noted there was no evidence to suggest the General Assembly intended the statute to impose strict liability; nevertheless, the court held the absence of a *mens rea* requirement meant the statute imposed strict liability. *See* Trial Court Opinion, 2/21/02, at 5–6 ("[T]he above penal statute is, in essence, a strict liability statute[.]"). The court applied the reasoning of *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), and concluded because § 3124.2 carried a "harsh penalty" and "implicate[d] legal activity," Trial Court Opinion, 2/21/02, at 8, the absence of a *mens rea* requirement violated due process.

In *Staples*, the United States Supreme Court addressed a federal statute criminalizing the possession of an unregistered machine gun. While the federal statute contained no express *mens rea* requirement, the defendant claimed he was unaware the rifle he owned had been modified to fire automatically, and he argued such knowledge was necessary to convict him under the statute. *Id.*, at 603, 114 S.Ct. 1793. The Court examined whether Congress intended the statute to impose strict liability as to the defendant's knowledge of the rifle's capability to fire auto-

matically. The Court noted a *mens rea* requirement was traditionally required in criminal statutes; strict liability offenses are generally disfavored, and some indication of congressional intent to impose strict liability is required to dispense with *mens rea*. *Id.*, at 605–06, 114 S.Ct. 1793. In holding *mens rea* was required, the Court emphasized two factors. First, the heavy penalty for violating the statute was inconsistent with a public welfare or regulatory offense. *Id.*, at 616, 114 S.Ct. 1793. Second, absent knowledge of the rifle's automatic firing capability, the nature of the prohibited conduct—possession of a rifle—was "entirely innocent." *Id.*, at 615, 114 S.Ct. 1793. Given these circumstances, and because Congress had not clearly intended to impose strict liability, the Court held *mens rea* was required for conviction. *Id.*, at 619, 114 S.Ct. 1793.

Here, the trial court concluded:

> Like the statute in *Staples*, the statute at bar implicates legal activity—consensual sex between persons who would have no reason to know that their contact with that particular person was prohibited. Moreover, because such ignorant violation is subject to harsh penalty, we properly determined under *Staples* that our statute violates due process.

Trial Court Opinion, 2/21/02, at 8. Without question, the statute's status as a third degree felony is inconsistent with a public welfare or regulatory offense. The court's suggestion, however, that the statute "implicates legal activity" is questionable. Unlike possession of a rifle, which implicates a fundamental right, sex between correctional staff and inmates is something a reasonable person—to say nothing of a reasonable corrections officer-would know is highly inappropriate, if not illegal.

There is no trap in § 3124.2 for the well-intentioned corrections officer.

▮▮▮▮▮ Furthermore, the trial court overlooked the critical threshold issue in *Staples:* an inquiry into the authorized punishment and the character of the prohibited conduct is warranted only where the legislature's intent as to *mens rea* is unclear. "[T]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Staples,* at 604, 114 S.Ct. 1793 (quoting *Liparota v. United States,* 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)). What *mens rea* a criminal statute requires—if any—is a question of statutory construction and interpreting the intent of Congress. *Id.,* at 605, 114 S.Ct. 1793. The rule in this Commonwealth is no different: "Whether a given statute is to be construed as requiring criminal intent is to be determined by the court, by considering the subject matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the legislature." *Commonwealth v. Black,* 251 Pa.Super. 539, 380 A.2d 911, 913 (1977).

The trial court's foray into a *Staples* analysis was unnecessary because evidence of the General Assembly's intent as to the *mens rea* of § 3124.2 is clear. Although the statute is silent as to *mens rea,* 18 Pa.C.S. § 302 provides for such situations: "CULPABILITY REQUIRED UNLESS OTHERWISE PROVIDED.—When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa.C.S. § 302(c). Once the trial court determined the General Assembly did not intend § 3124.2 to be a strict liability crime, it need have done nothing more than advert to § 302(c) and require the Commonwealth to prove at least recklessness. Thus, to be convicted under § 3124.2, a corrections officer would have to be at least reckless as to the status of their sexual partner as an "inmate, detainee, patient or resident." 18 Pa.C.S. § 3124.2(a). Had the trial court done this, its concern—which pervades its opinion—about the conviction of hapless corrections officers for having consensual sex with persons who unbeknown to them are inmates, would be alleviated.

The trial court's misapplication of *Staples* aside, the court inexplicably declared § 3124.2 unconstitutional instead of reading an implied *mens rea* requirement into it. Apparently, the court declined to do this because it viewed the statute as "beyond resuscitation." Trial Court Opinion, 2/21/02, at 7. The court stated, "[B]ecause the statute is constitutionally deficient in so many aspects, it cannot be fixed merely by court clarification[.]" *Id.,* at 8. However, applying 18 Pa.C.S. § 302(c) to require at least recklessness renders the statute perfectly constitutional. Section 3124.2 is not unconstitutional for lacking an express *mens rea* requirement.

The judgment of the Court of Common Pleas of Montgomery County is reversed, and the case is remanded to that court for trial. Jurisdiction relinquished.

Justice NIGRO concurs in the result.