J-A18016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JENNIFER L. MERKLINGER | |
| Appellant | No. 2195 MDA 2014 |

Appeal from the Judgment of Sentence entered November 24, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0001089-2014

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 29, 2015**

Appellant Jennifer L. Merklinger appeals from the judgment of sentence entered in the Court of Common Pleas of Berks County (trial court), following a bench trial that resulted in Appellant being found guilty of institutional sexual assault under Section 3124.2(a.2)(1) of the Crimes Code, 18 Pa.C.S.A. § 3124.2(a.2)(1).  Upon review, we affirm.

On January 10, 2014, Appellant was charged with institutional sexual assault under Section 3124.2(a.2)(1) for having sexual relations with a male student.  The affidavit of probable cause accompanying the complaint provided in part:

> [Appellant] confessed . . . and admitted to having kissed [the victim] while parked [i]n the parking lot of the Berkshire Mall in Wyomissing, Berks County, Pennsylvania on December 19, 2013 at approx. 6:00 p.m.
>
> [Appellant] stated that on December 20, 2013, after being picked up by the victim[, Appellant] had sexual intercourse in his

truck. The victim had taken [Appellant] to his home in the Borough of Shoemakersville and again had [s]exual [i]ntercourse on the livingroom [sic] sofa. [Appellant] and [the victim] then went to Buck Rubs Club where she was drinking beer.

Upon the [v]ictim being interviewed, he admitted that [o]n December 20, 2013 at approx. 8:30 p.m. the [v]ictim parked his truck at the Fire Tower, located in Schuylkill County, where [Appellant] had performed [o]ral [s]ex on him and gave him a hand job.

On December 23, 2013, [Appellant] performed [o]ral [s]ex on the victim due to having her [m]enstrual [c]ycle at her home in the Borough of Hamburg, Berks County, Pennsylvania.

Affidavit of Probable Cause, 1/10/14.

On April 23, 2014, Appellant filed a "Motion to Quash the Bills [sic] of Information," asserting, *inter alia*, that Section 3124.2(a.2)(1) was unconstitutionally vague to the extent it applied to women. Section 3124.2(a.2)(1) provides that "a person who is . . . an employee of a school . . . commits a felony of the third degree when he engages in sexual intercourse, deviate sexual intercourse or indecent contact with a student of the school." 18 Pa.C.S.A. § 3124.2(a.2)(1). Appellant also asserted that Section 3124.2(a.2)(1) was unconstitutionally overbroad because it punished a substantial amount of protected conduct. Following the Commonwealth's response, the trial court denied Appellant's motion to quash the information on July 30, 2014.

On August 5, 2014, Appellant waived her right to a jury trial. On August 21, 2014, the case proceeded to a bench trial, at which Appellant stipulated to the following facts:

1. [Appellant] is a female individual with a date of birth of June 8, 1973.

2. [The victim] is a male individual with a date of birth of September 12, 1995.

3. On or about the dates of December 13, 2013, through January 1, 2014, [Appellant] engaged in sexual intercourse, deviate sexual intercourse, and indecent contact, as defined in 18 Pa.C.S.A. § 3101, with [the victim]. These acts shall be referred to as the "Sexual Acts."

4. The Sexual Acts occurred on multiple occasions in Berks County, Pennsylvania.

5. When [Appellant] and [the victim] engaged in Sexual Acts[,] [the victim] was a student of Hamburg Area High School, and [Appellant] was employed as a teacher's aide at Hamburg Area High School.

6. If called to testify[,] Criminal Investigator Angel C. Cabrera, of Hamburg Police Department, would testify that [Appellant], on January 03, 2014, voluntarily gave a written statement admitting to the Sexual Acts.

Stipulation, 8/21/14. Following the stipulated bench trial, the trial court convicted Appellant of institutional sexual assault under Section 3124.2(a.2)(1). On November 24, 2014, the trial court sentenced Appellant to five years' probation. Appellant timely appealed.

In her Pa.R.A.P. 1925(b) statement of errors complained of on appeal, Appellant raised the following assertions of error:

1. The trial court erred as a matter of law [in] determining that 18 Pa.C.S.A. [§] 3124.2(a.2)(1) relating to institutional sexual assault is enforceable and not unconstitutionally vague.

2. The trial court erred as a matter of law [in] determining that 18 Pa.C.S.A. [§] 3124.2(a.2)(1) relating to institutional sexual assault is enforceable and not unconstitutionally overbroad upon a basis that it punishes a substantial amount of conduct protected by the United States and Pennsylvania Constitutions.

Rule 1925(b) Statement, 1/2/15. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that Section 3124.2(a.2)(1) passed constitutional muster.

On appeal, Appellant raises four issues for our review:

1. Whether the activity of adults engaging in consensual sexual relations is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment of [sic] the United States Constitution?

2. Whether the activity of adults to [sic] engaging in consensual sexual relations is a fundamental right protected by Article I Section 9 of the Pennsylvania Constitution?

3. Whether 18 Pa.C.S.A. [§] 3124.2(a.2)(1) relating to institutional sexual assault is unconstitutionally vague?

4. Whether 18 Pa.C.S.A. [§] 3124.2(a.2)(1) relating to institutional sexual assault is unconstitutionally overbroad because it punishes a substantial amount of conduct protected by the United States and Pennsylvania Constitutions?[1]

Appellant's Brief at 4.[2]

At the outset, we note that Appellant has failed to preserve the first two issues for our review, because she failed to include them in her Rule 1925(b) statement. The failure to raise an issue in an ordered Rule 1925(b) statement results in waiver of that issue on appeal. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (holding issues not raised in Rule 1925 concise statement are waived); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with

_____

[1] To the extent Appellant asserts an overbreadth challenge under the Pennsylvania Constitution, such challenge is abandoned because Appellant failed to raise it in the argument section of her brief. *See* Pa.R.A.P. 2119(a), (b).

[2] Appellant's brief is largely a reproduction of her "Memorandum of Law in Support of [Appellant's] Motion to Quash Bills of Information" filed in the trial court.

the provisions of this paragraph (b)(4) are waived."). Because Appellant has waived her first two issues, we begin our analysis with her third issue.

Appellant argues that Section 3124.2(a.2)(1) is vague because "ordinary people of common intelligence must necessarily guess at the meaning of the statute and reasonably could differ as to the statute's application to women." Appellant's Brief at 15. As a result, Appellant argues that Section 3124.2(a.2)(1) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 10. To bolster her argument, Appellant points to Section 3124.2(a.2)(1)'s use of the masculine term "he." *Id.* at 15. Appellant argues that Section 3124.2(a.2)(1) "does not provide a clear and reasonable standard by which women can gauge their conduct." *Id.* We disagree.

In analyzing the constitutionality of Section 3124.2(a.2)(1), we recognize:

> [T]here is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. As a matter of statutory construction, we presume the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth. A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality.

*Commonwealth v. Mayfield*, 832 A.2d 418, 421 (Pa. 2003) (internal quotation marks and citations omitted).

With respect to the constitutional vagueness standard, our Supreme Court explained in *Mayfield*:

The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct.

*Id.* at 422 (internal quotation marks and citations omitted). Moreover, it is settled that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."[3] *Id.*

In *Mayfield*, our Supreme Court addressed a constitutional vagueness challenge to a provision of Section 3124.2 pertaining to corrections officers. The Commonwealth in *Mayfield* contended that the trial court erred in declaring Section 3124.2 unconstitutionally vague because it failed to defined the terms "inmates" and "employees." *Id.* Our Supreme Court agreed. In so doing, the Court concluded:

Applied to appellee's[, a corrections officer's,] conduct, the statute could not be clearer. In pertinent part, § 3124.2 provides, "[A] person who is an employee or agent of . . . a county correctional authority . . . commits a felony of the third degree when that person engages in sexual intercourse . . . or indecent contact with an inmate[.]" 18 Pa.C.S. § 3124.2(a). The statute's plain language reveals the intent of the General

_____

[3] Appellant does not raise any First Amendment challenges to Section 3124.2(a.2)(1).

- 6 -

Assembly: to prohibit sexual contact between correctional staff and inmates. It is sufficiently definite that ordinary people can understand what conduct is prohibited, and is not so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. The statute provides reasonable standards for correctional personnel to gauge their conduct—namely, sexual contact with inmates is forbidden. Whatever latent ambiguities may lurk in the terms "inmate" or "employee" are not implicated here. [The a]ppellee was a county corrections officer; she was unquestionably an "employee" of a county correctional facility. The persons with whom she allegedly had sexual contact were indisputably "inmates" at that facility. [The a]ppellee's alleged conduct is precisely what the General Assembly intended to proscribe when it enacted § 3124.2, which is not unconstitutionally vague.

*Id.* at 422-23 (some internal quotations marks and citations omitted).

Section 3124.2(a.2) at issue *sub judice* provides in part:

(1) Except as provided in sections 3121, 3122.1, 3123, 3124.1 and 3125, a person who is a volunteer or **an employee** of a school or any other person who has direct contact with a student at a school commits a felony of the third degree when **he** engages in sexual intercourse, deviate sexual intercourse or indecent contact with a student of the school.

(2) As used in this subsection, the following terms shall have the meanings given to them in this paragraph:

   (i) "Direct contact." Care, supervision, guidance or control.

   (ii) "Employee."

      (A) Includes:

         (I) A teacher, a supervisor, a supervising principal, a principal, an assistant principal, a vice principal, a director of vocational education, a dental hygienist, a visiting teacher, a home and school visitor, a school counselor, a child nutrition program specialist, a school librarian, a school secretary the selection of whom is on the basis of merit as determined by eligibility lists, a school nurse, a substitute teacher, a janitor, a cafeteria worker, a bus driver, **a teacher aide** and any other employee **who has direct contact with school students**.

18 Pa.C.S.A. § 3124.2(a.2) (emphasis added).

With the foregoing principles in mind, and based on our review of Section 3124.2(a.2)(1), we conclude that, as in **Mayfield**, Appellant's constitutional vagueness challenge also is devoid of merit. Specifically, Appellant's argument that the term "he" as used in Section 3124.2(a.2)(1) does not apply to women is spurious. As the Commonwealth aptly points out, Section 1902 of the Statutory Construction Act explicitly provides that "[w]ords used in the masculine gender shall include the feminine and neuter." 1 Pa.C.S.A. § 1902; **see also Commonwealth v. Vagnoni**, 416 A.2d 99, 100 (Pa. Super. 1979) (holding that "the word 'he' shall refer to women as well as men as does the word "person").

Moreover, as in **Mayfield**, instantly the statute's plain language reveals that the legislature intended to prohibit sexual contact between school employees and students. Section 3124.2(a.2)(1), therefore, is sufficiently definite that ordinary people can understand what conduct is prohibited, and is not so vague that men and women of common intelligence must necessarily guess at its meaning and differ as to its application. **See Mayfield**, **supra**. It is undisputed here that Appellant was employed as a teacher aide by the school district and the victim was a student in the same school district. As an employee of the school district, Appellant should have appreciated Section 3124.2(a.2)(1)'s reasonable standards barring sexual contact with students. Accordingly, we conclude that Section 3124.2(a.2)(1) is not vague under the Due Process Clause of the Fourteenth Amendment.

Appellant next argues that Section 3124.2(a.2)(1) is overbroad in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In particular, Appellant argues that Section 3124.2(a.2)(1) "punishes a substantial amount of protected conduct" to the extent it bars two consenting adults from engaging in sexual contact. We again disagree.

In **Mayfield**, our Supreme Court outlined the standards governing an overbreadth challenge:

> A statute is overbroad if by its reach it punishes a substantial amount of constitutionally-protected conduct. If the overbreadth of the statute is substantial, judged in relation to its legitimate sweep, it may not be enforced against anyone until it is narrowed to reach only unprotected activity. The function of overbreadth adjudication, however, attenuates as the prohibited behavior moves from pure speech towards conduct, where the conduct falls within the scope of otherwise valid criminal laws that reflect legitimate state interests.

**Mayfield**, 832 A.2d at 425 (citation omitted). The overbreadth challenge in **Mayfield** involved Section 3124.2 pertaining to corrections officers. The Court principally relied on the then-recent United States Supreme Court decision in **Lawrence v. Texas**, 539 U.S. 558 (2003), in finding the statute constitutional. The Court reasoned:

> While **Lawrence** clearly establishes a due process right of consenting adults to engage in private sexual conduct free from governmental interference, the United States Supreme Court was careful to qualify the reach of its holding: "The present case does not involve minors. **It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct** or prostitution." Sexual contact between correctional staff and inmates is obviously rife with the possibility of coercion, both subtle and overt, given the extensive power guards exercise over inmates. Furthermore, public correctional institutions can in no way be likened to that

"most private of places, the home." **Lawrence**, at [567]. While the state interest in regulating private consensual sex between adults is low, in the setting of a correctional institution the calculus of interests is fundamentally different.

In such a setting, the state interest in maintaining institutional order and discipline is high, and the interest of the individual is necessarily limited. The United States Supreme Court noted this essential difference in **Pell v. Procunier**, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974):

> We have recognized, however, that the relationship of state prisoners and the state officers who supervise their confinement is far more intimate than that of a State and a private citizen, and that the internal problems of state prisons involve issues . . . peculiarly within state authority and expertise.

**Id.,** at 825–26, 94 S.Ct. 2800 (quotation marks omitted). The Commonwealth has an undeniable interest in ensuring the "relationship of state prisoners and the state officers who supervise their confinement," **id.**, as well as institutional order and discipline, is not undermined by sexual contact, consensual or otherwise. Therefore, we conclude § 3124.2 does not "punish [] a substantial amount of constitutionally-protected conduct." Rather, the statute regulates "conduct [that] falls within the scope of otherwise valid criminal laws that reflect legitimate state interests." Section 3124.2 is not unconstitutionally overbroad

**Mayfield**, 832 A.2d at 425 (some internal citations omitted) (emphasis added).

Applying the foregoing principles, we reach the same conclusion as the Court in **Mayfield**, because Section 3124.2(a.2)(1) does not punish a substantial amount of constitutionally-protected conduct by its terms that bar school employees from having sexual contact with students. In a school setting, it is safe to assume that sexual contact between school employees, including teacher aides, and students "is rife with the possibility of coercion, both subtle and overt," given the extensive power school employees exercise over students. **Mayfield**, **supra**. In fact, it is entirely plausible that school

- 10 -

employees may exploit their position vis-à-vis students for personal benefits, including sex. As the trial court observed:

> Section 3124.2 directly targets this sort of inexorable power disparity between students and school employees. The victim's age does not make the relationship less coercive. Indeed, the victims in **Mayfield** may have been significantly older than age eighteen—it is an irrelevant consideration.

Trial Court Opinion, 2/11/15, at 7. Accordingly, consistent with **Mayfield**, we conclude that Section 3124.2(a.2)(1) regulates conduct that falls within the scope of otherwise valid criminal laws that reflect legitimate state interests. **See Mayfield**, **supra**. Section 3124.2(a.2)(1), therefore, is not unconstitutionally overbroad. **Id.**

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/29/2015

- 11 -