J-S71022-17

2018 PA Super 48

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RUSTY LEE BRENSINGER | |
| Appellant | No. 212 EDA 2017 |

Appeal from the PCRA Order entered December 23, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No: CP-39-CR-0003251-1997

BEFORE: PANELLA, STABILE, and PLATT,* JJ.

OPINION BY STABILE, J.:                    **FILED MARCH 05, 2018**

Appellant, Rusty Lee Brensinger, appeals from the December 23, 2016 order entered in the Court of Common Pleas of Lehigh County, denying as untimely his second petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Appellant contends that science has evolved from the time of his 1998 trial, leading experts to recognize now that "short falls" can result in infant deaths previously believed to be the result of "Shaken Baby Syndrome." He argues that expert opinions obtained in early 2015—rejecting Shaken Baby Syndrome as the cause of the 1997 death of 16-month old Brittany Samuels—constituted newly-discovered

_____

* Retired Senior Judge assigned to the Superior Court.

facts under 42 Pa.C.S.A. § 9545(b)(1)(ii) and an exception to the PCRA's time bar. Following careful review, we affirm.

A review of the trial transcripts reflects that Brittany's mother, Michelle Samuels, testified at trial that Brittany fell from a kitchen chair on April 26, 1997 and hit her head on a hard floor. *See* Notes of Testimony ("N.T."), Trial, 4/20/98, at 697-700. Ms. Samuels also testified that while she was showering on April 28, 1997, Appellant, who was her boyfriend at the time, banged on the bathroom door and said there was something wrong with Brittany. *Id.* at 747. Appellant told Ms. Samuels that he heard a thud, waited a few minutes, and then went to the bedroom where he found Brittany lying on the floor next to her portacrib. *Id.* at 750.

Brittany was taken to a nearby hospital and was transferred to Children's Hospital of Philadelphia where she died on April 29, 1997. A treating pediatrician at the first hospital testified that the severity of Brittany's injuries was not consistent with the reported history of a fall. N.T., Trial, 4/16/98, at 455, 508-09. The Commonwealth's expert forensic pathologist offered his opinion that Brittany's injury was not consistent with a fall from a kitchen chair or portacrib but was a homicide resulting from being shaken. *Id.*, 4/22/98, at 1427-32.

The PCRA court offered the following procedural background:

On April 29, 1998, [Appellant] was found guilty by a jury of third-degree murder in relation to the death of 16-month old Brittany Samuels, the daughter of [Appellant's] then-girlfriend, Michelle Samuels. [Appellant] was subsequently sentenced to

serve 20 to 40 years in prison. Following the denial of post-sentence motions, [Appellant] filed a timely appeal, and the Pennsylvania Superior Court affirmed the judgment of sentence on December 1, 1999. The Pennsylvania Supreme Court denied allocatur on May 30, 2000. [Appellant] did not seek a writ of certiorari in the U.S. Supreme Court.

On July 18, 2001, [Appellant] filed his first timely PCRA petition. Following a hearing, the PCRA court denied the petition. [Appellant] appealed, and the Superior Court affirmed the PCRA court on May 13, 2003. On April 24, 2015, [Appellant] filed the instant petition, his second under the PCRA.[1] The petition appears untimely on its face. Hearings relating to the timeliness of the petition were held on May 2, 2016, and July 15, 2016. Following the last hearing, [the PCRA court] took the issue under advisement, [and issued an opinion and order on December 23, 2016, dismissing Appellant's petition as untimely].

PCRA Court Opinion, 12/23/16, at 1-2.

Appellant filed a timely appeal from the December 23, 2016 order. The PCRA court did not direct Appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The PCRA court issued an order on January 13, 2017, indicating that its December 23, 2016 opinion specified in writing the place in the record where the reasons for the court's order appear, satisfying the requirements of Pa.R.A.P. 1925(a)(1).

Appellant presents four issues for our consideration:

_____

[1] Appellant's petition was filed by "his newly-retained pro bono attorneys, Nilam A. Sanghvi, Mark D. Freeman, Howard D. Scher, and John J. Powell." PCRA Petition, 4/24/15, at 1. Sanghvi is an attorney with the Pennsylvania Innocence Project ("PIP") in Philadelphia; Freeman is an attorney with an office in Media; Scher and Powell are attorneys with Buchanan Ingersoll & Rooney PC in Philadelphia. All counsel represent Appellant in this appeal as well.

1. Whether the PCRA court erred in determining that it did not have jurisdiction over [Appellant's] PCRA petition?

2. Whether jurisdiction exists because the PCRA's timing provisions are unconstitutionally void-for-vagueness in the context of claims like [Appellant's] that are predicated upon expert opinions applying evolving scientific principles to the facts of the case?

3. Whether **Commonwealth v. Peterkin**, 722 A.2d 638 (Pa. 1998), was wrongly decided?

4. Whether **Commonwealth v. Edmiston**, 65 A.3d 339 (Pa. 2013), was wrongly decided?

Appellant's Brief at 6 (noting the third and fourth issues were raised "to preserve them for any further appeal to the Pennsylvania Supreme Court").

Our standard of review is well-settled. "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Taylor**, 67 A.3d 1245, 1248 (Pa. 2013) (citation and internal quotations omitted), *cert. denied*, 134 S.Ct. 2695 (U.S. 2014). "The PCRA timeliness requirement, however, is mandatory and jurisdictional in nature." **Id**. (citation omitted).

In his first issue, Appellant asks us to consider whether the PCRA court erred in concluding Appellant's petition was untimely, stripping the PCRA court of jurisdiction to consider its merits. As the PCRA court correctly recognized, neither that court nor this Court has jurisdiction over an untimely petition. PCRA Court Opinion, 12/23/16, at 4 (citing **Commonwealth v. Fahy**, 737 A.2d 214, 223 (Pa. 1999)). The PCRA court also acknowledged that, to be

timely, a petition must be filed within one year of the date the petitioner's judgment of sentence became final, unless the petitioner pleads and proves an exception to the PCRA's one-year time bar. *Id.* (citing 42 Pa.C.S.A. § 9545(b)(1)). Further, a petitioner claiming an exception must file the petition within 60 days of the date the claim could have been presented. *Id.* (citing 42 Pa.C.S.A. § 9545(b)(2)).

Again, our Supreme Court denied Appellant's petition for allowance of appeal on May 30, 2000. Appellant had the option to seek *certiorari* to the United States Supreme Court within 90 days of May 30, 2000, *i.e.*, by August 28, 2000. Because he did not seek *certiorari*, his judgment of sentence was final on August 28, 2000 and he had until August 28, 2001 to file a timely PCRA petition.

Appellant's instant petition was filed on April 24, 2015, and is untimely on its face. Therefore, absent an exception, the PCRA court was without jurisdiction to consider the petition.

Appellant asserts his petition is not time-barred because he obtained expert opinions that constituted newly-discovered facts under 42 Pa.C.S.A. § 9545(b)(1)(ii), *i.e.*, facts upon which his claim is predicated that "he could not have known at the time of trial with the exercise of due diligence and which, if presented to the jury in his case, would have changed the outcome of his trial." PCRA Petition, 4/24/15, at ¶ 125. Appellant further contends he satisfied the requirements of 42 Pa.C.S.A. § 9545(b)(2) by raising the claims

within 60 days of time the information was initially discovered, *i.e.*, within 60 days of the dates on which "[his] medical experts gave the opinions . . . that there is no scientific evidence to support the conclusion that Brittany died due to shaking." *Id.* at ¶ 126.

The PCRA court rejected Appellant's proffer of the newly-discovered facts exception, stating:

> I find [Appellant] has failed to establish that he could not have discovered these "unknown facts" by the exercise of due diligence. [Appellant] claims the expert opinions themselves are the new facts supporting his claim. However, it is the underlying scientific principles supporting those opinions that are the "facts" for purposes of Section 9545(b)(1)(ii). **Commonwealth v. Edmiston**, 65 A.3d [339, 352 (Pa. 2013)]. [Appellant] emphasizes that his experts' opinions must be considered the unknown facts because it was the first time new scientific principles were applied specifically to the facts of this case. Unfortunately, those scientific principles were in the public domain before February 2015, and [Appellant] does not offer a reasonable explanation as to why he could not have secured experts sooner to apply those principles to the facts of his case.
>
> "[D]ue diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, *based on the particular circumstances*, to uncover facts that may support a claim for collateral relief." **Commonwealth v. Burton**, 121 A.3d 1063, 1071 (Pa. Super. 2015), *appeal granted*, 158 A.3d 618 (Pa. 2016) (emphasis added).[2] While it is true that

---

[2] After the PCRA court issued its opinion, our Supreme Court affirmed this Court's decision in **Burton**. **See Commonwealth v. Burton**, 158 A.3d 618, 638 (Pa. 2017) ("presumption that information which is of public record cannot be deemed 'unknown' for purposes of subsection 9545(b)(1)(ii) *does not apply* to *pro se* prisoner petitioners") (emphasis in original). Further, our Supreme Court directed that a PCRA court engage in the process followed by the PCRA court in this case, *i.e.*:

[Appellant] has been incarcerated since his conviction and his family has limited resources, he has been represented by counsel since at least 2009, and has had the Pennsylvania Innocence Project working on his case since 2011. When a petitioner is represented by counsel, public records should be presumptively knowable. ***Commonwealth v. Burton***, 121 A.3d 1063, 1071 (Pa. Super. 2015), *appeal granted*, 158 A.3d 618 (Pa. 2016).

The reports offered by [Appellant] cite to studies and research published from 2004 to 2012. More notably, [Appellant's] own experts from the PCRA hearing indicated the turning point in scientific research in the area of shaken baby syndrome began to occur as early as 2001. Finally, there is some question as to whether the studies and research relied on by [Appellant] could have been discovered with the exercise of due diligence prior to the filing of [Appellant's] petition in 2015. Similarly, [Appellant] has failed to prove that he filed his petition within 60 days of when it first could have been raised.

[Appellant] has failed to meet his burden of proving an exception to the PCRA's time limit, and this court is without jurisdiction to hear the merits of the petition.

PCRA Court Opinion, 12/23/16, at 5-7 (footnotes omitted).

We agree. Appellant filed his petition within 60 days of receiving expert

opinions, not within 60 days of scientific determinations supporting those

_____

[C]onsistent with the statutory language, in determining whether a petitioner qualifies for the exception to the PCRA's time requirements pursuant to subsection 9545(b)(1)(ii), the PCRA court must first determine whether "the facts upon which the claim is predicated were unknown to the petitioner." In some cases, this may require a hearing. After the PCRA court makes a determination as to the petitioner's knowledge, it should then proceed to consider whether, if the facts were unknown to the petitioner, the facts could have been ascertained by the exercise of due diligence, including an assessment of the petitioner's access to public records.

***Id.*** (footnote omitted).

opinions. As our Supreme Court reiterated in **Edmiston**, "a petitioner must allege and prove previously unknown facts, not merely a newly discovered or newly willing source for previously known facts." **Id.**, 65 A.3d at 352 (citations and internal quotations omitted). **See also Commonwealth v. Smallwood**, 155 A.3d 1054 (Pa. 2017). Here, it is clear the experts who authored the reports were merely newly discovered sources for previously known facts.

In his petition, Appellant claimed that the expert testimony from his trial was fundamentally unreliable and undermined the fundamental fairness of his trial, violating his due process rights. PCRA Petition, 4/24/15, at 45. In support of that assertion, Appellant notes that "[c]ourts and prosecutors around the country have demonstrated, especially in recent years, a willingness to grant relief for those whose convictions were based on outdated, and now unreliable, scientific testimony, including in [Shaken Baby Syndrome ("SBS")] cases. **Id.** at ¶ 130. Appellant cites cases from New York, Wisconsin and Illinois in which courts have granted new trials in light of scientific developments in SBS cases. **Id.** at ¶¶ 131-34. Importantly, a reading of the cited cases suggests that none of those jurisdictions is bound by time constraints and jurisdictional limitations such as those imposed by Pennsylvania's PCRA. Even more importantly, a reading of one of those cases confirms that the "newly-discovered facts" upon which Appellant relies were known prior to February 2015.

As Appellant explains, in **People v. Bailey**, 999 N.Y.S.2d 713 (Monroe County Ct. 2014), "a New York trial court granted a new trial to Rene Bailey, a daycare owner convicted in 2001 of murdering a child in her care who became unresponsive after falling from a park bench." PCRA Petition, 4/24/15, at ¶ 131. "Like [Appellant,] Bailey was convicted on the basis of expert testimony premised on now-discredited understandings about SBS." **Id.** Of note is the fact that two of the experts who testified on behalf of Bailey at her April 2014 hearing were Julie Mack, M.D., and John G. Galaznik, M.D. On behalf of Bailey, Mack testified as an expert in radiology and Galaznik testified as an expert in pediatrics. Both explained that beliefs regarding SBS that were widely accepted at the time of Bailey's 2001 trial had changed in the intervening years. **Bailey**, 999 N.Y.S.2d at 721-722. In particular, Galaznik referenced a 2009 article published by the American Academy of Pediatrics "in which it was acknowledged that injuries from accidental and abusive cause overlap. Further, the Academy removed the claim that short falls do not cause symptoms like those observed in [the victim in the **Bailey** case]." **Id.** at 722.

That Mack and Galaznik testified at the April 2014 Bailey hearing is important, not only because both experts testified as to changes in beliefs about SBS but also because they are two of the experts who authored expert reports on behalf of Appellant in 2015 and who testified on Appellant's behalf during the May 2, 2016 evidentiary hearing conducted to ascertain the

timeliness of Appellant's petition. While the experts' reports prepared for Appellant's case were dated 2015, it is clear the science supporting those reports was known when those experts testified at Bailey's April 2014 hearing. Therefore, we reject Appellant's contention that the relevant scientific principles were not in the public domain prior to April 2015 when he secured his expert reports.

Appellant also argues that the PCRA court erred in finding that public records regarding SBS were "presumptively knowable" to Appellant because he "has been represented by [Attorney Freeman] since at least 2009." Appellant's Brief at 43 (quoting PCRA Court Opinion, 12/13/16, at 6). He claims the PCRA court's determination is not supported by the record. In essence, he contends the presumption that public record information "cannot be deemed 'unknown' for purposes of subsection 9545(b)(1(ii)" should not apply to him while he was *pro se*. **See Burton**, 158 A.3d at 638.

We recognize that the record does not specify when Freeman began representing Appellant. According to Freeman, he first looked at Appellant's case in 2009. N.T., PCRA Hearing, 5/2/16, at 30.[3] "At some point," after looking at it, he decided to become involved in the case. **Id.** When asked

---

[3] Freeman was initially contacted through the efforts of a relative whom Appellant called in March 2009 after he "heard some gossip [in prison] that there was some new evidence out there" regarding shaken baby syndrome and he "needed help finding it." N.T., PCRA Hearing, 7/15/16, at 17-20, 43-45.

about his interaction with PIP, he explained, "This is the only case I have [been] involved in with [PIP]. I am completely pro bono. I was only involved in this. I willingly and happily am helping [Appellant] because I believe he is innocent." *Id.* at 31. Freeman explained that he "did not get [PIP] involved" and did not recall the date it became involved but had no reason to doubt it was around 2011. *Id.*

Appellant testified Freeman is pro bono counsel for him and that Freeman reviewed the files and records in the case. N.T., PCRA Hearing, 7/15/16, at 31-33. Freeman gave Appellant an address for PIP and Appellant received a response from PIP asking for records. *Id.* at 32-33. Appellant "told them that Mark Freeman had them, and they said it would go through a review stage or stages," a process that took four years, *i.e.*, from 2011 until 2015. N.T., PCRA Hearing, 7/15/16, at 33. It was not until 2015 that Appellant signed a representation agreement with PIP. *Id.* at 34.[4]

While the record does not specifically indicate that Appellant was represented by Freeman as early as 2009, as the PCRA court concluded, it does support a finding Freeman was involved in Appellant's case in 2009 and represented him and maintained certain of his records before PIP became involved in 2011. Therefore, we believe the PCRA court was justified in concluding that Appellant "has been represented by counsel since at least

---

[4] The record does not reflect when Scher and Powell became involved in Appellant's case.

2009, and has had the Pennsylvania Innocence Project working on his case since 2011." PCRA Court Opinion, 12/23/16, at 6.

The PCRA imposes the burden on a petitioner to plead and prove an exception to the PCRA's time limitations. If Appellant had proven he was *pro se* until he signed a letter of representation with PIP, he might have availed himself of the Supreme Court's ruling in **Burton**. However, he did not prove he was unrepresented, and the testimony from the PCRA hearing suggests he was represented by Freeman for several years prior to the filing of his 2015 petition. As such, public record information relating to SBS cannot be deemed unknown to him for purposes of the newly-discovered facts exception to the PCRA's time bar.

We find no error in the PCRA court's determination that Appellant's petition was untimely and not saved by an exception to the PCRA's time limits. Therefore, we find no error in the PCRA court's conclusion that it lacked jurisdiction over Appellant's petition. Appellant's first issue fails.

In his second issue, Appellant asks this Court to find that jurisdiction exists because the PCRA's timing provisions are unconstitutionally void-for-vagueness for claims based on expert opinions that apply evolving scientific principles.[5] "As a threshold matter, a statute is presumed to be constitutional

_____

[5] Although not in the context of "void-for-vagueness," our Supreme Court has determined that the PCRA time limitations and its exceptions are

and will only be invalidated as unconstitutional if it 'clearly, palpably, and plainly violates constitutional rights.'" ***Commonwealth v. Ludwig***, 874 A.2d 623, 628 (Pa. 2005) (quoting ***Commonwealth v. MacPherson***, 752 A.2d 384, 388 (Pa. 2000)). As a challenge to the constitutionality of the PCRA's timing requirements, our scope of review is plenary. ***MacPherson***, 752 A.2d at 388.

This Court previously rejected a similar request to "measure the challenged statutory proscription . . . against hypothetical conduct that the statutory language could arguably embrace." ***Commonwealth v. Kakhankham***, 132 A.3d 986, 990 (Pa. Super 2015) (quoting ***Commonwealth v. Heinbaugh***, 354 A.2d 244, 245 (Pa. 1976)). As we explained in ***Kakhankham***, "[i]t is well established that vagueness challenges

_____

constitutional. ***Commonwealth v. Peterkin***, 722 A.2d 638, 643 (Pa. 1998). As the Court explained:

> At some point litigation must come to an end. The purpose of law is not to provide convicted criminals with the means to escape well-deserved sanctions, but to provide a reasonable opportunity for those who have been wrongly convicted to demonstrate the injustice of their conviction. The current PCRA places time limitations on such claims of error, and in so doing, strikes a reasonable balance between society's need for finality in criminal cases and the convicted person's need to demonstrate that there has been an error in the proceedings that resulted in his conviction.

***Id.*** (footnote omitted).

to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." **Id.** (quotation omitted). "Therefore, we will address the alleged vagueness of [the statutory provision] as it applies to this case." **Id.** (quoting **Commonwealth v. Mayfield**, 832 A.2d 418, 422 (Pa. 2003)).[6] Further, as our Supreme Court has stated, "[u]nder the void-for-vagueness standard, a statute will only be found unconstitutional if the statute is 'so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" **Commonwealth v. Davidson**, 938 A.2d 198, 207 (Pa. 2007) (quoting **Commonwealth v. Cotto**, 753 A.2d 217, 220 (Pa. 2000) (quotations omitted)); **see also Mayfield**, 832 A.2d at 422.

The timing provisions of the PCRA provide that "[a]ny petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). Again, the relevant provisions of paragraph (1) provide that the petition must be filed within one year of the time judgment becomes final unless Appellant alleged and proved that the facts upon which his "claim is predicated were

_____

[6] Appellant concedes that "[w]hether a statute is unconstitutionally vague is analyzed on a 'case by case basis. The statute or standard is examined as to whether it is vague as applied to the affected party.'" Appellant's Brief at 59 (quoting **San Filippo v. Bongiovanni**, 961 F.2d 1125, 1136 (3d Cir. 1992)).

unknown to [him] and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S.A. § 9545(b)(1)(ii).

Appellant contends that the timing provisions are vague when applied to prisoners whose PCRA challenge is grounded on new evidence that differs from the science used at trial. However, as reiterated in *Kakhankham*, we must consider whether the statutory provisions are vague when examined "in the light of the facts of the case at hand," *id.* at 990 (quoting *Heinbaugh*, 354 A.2d at 245), and we must examine the provisions to determine whether they are "vague as applied to [Appellant]." *See San Filippo*, 961 F.2d at 1136.

Here, the provisions are clear when examined in light of the facts of Appellant's case. Because his petition was filed more than one year after his judgment became final, he was required to allege and prove that the facts upon which the claim is predicated were unknown to him and could not have been ascertained by the exercise of due diligence, and was required to file the petition within 60 days of the date the claim could have been presented.

To ascertain whether the facts were unknown to and unascertainable by Appellant, the PCRA court held a hearing that spanned two days. The testimony provided by Appellant's experts at the hearing clearly established that science relating to SBS had evolved in the years subsequent to Appellant's trial. The various experts explained the timeline of advances in the area of SBS observed in their various specialties. For example, according to the

testimony of pediatric expert John G. Galaznik, M.D., the American Academy of Pediatrics updated its 2001 statement in 2009 to recognize that "[b]lunt impact *or* a combination of shaking and blunt impact cause injury."  N.T., PCRA Hearing, 5/2/16, at 217 (emphasis added).  As of that time, therefore, it was recognized that "short falls" could be responsible for injuries to infants that were previously widely blamed on SBS.  This testimony was virtually the same as the testimony Galaznik presented at the April 2014 hearing held in **People v. Bailey, supra**.  The fact that the experts did not pinpoint a specific date on which SBS diagnoses became suspect is not relevant here because, regardless of whether it was in 2001 or 2009, it was clearly more than 60 days prior to April 24, 2015, when Appellant filed the instant petition.  Therefore, as applied to Appellant, the 60-day requirement of 42 Pa.C.S.A. § 9545(b) is not vague when the science upon which his "newly-discovered facts" is based existed years before he filed his petition.  As the PCRA court concluded, Appellant failed to prove he filed his petition within 60 days of when the claim could have been presented.  Trial Court Opinion, 12/23/16, at 6.  We find no basis for declaring the PCRA's timing provisions unconstitutional as they apply to the case at hand.  Appellant's second issue fails.

In his third and fourth issues, Appellant asks whether our Supreme Court wrongly decided **Commonwealth v. Peterkin**, 722 A.2d 638 (Pa. 1998) and **Commonwealth v. Edmiston**, 65 A.3d 339 (Pa. 2013). Appellant acknowledges that he raised the issues "to preserve them for any further

appeal to the Pennsylvania Supreme Court." Appellant's Brief at 6. As the Commonwealth notes, Appellant's request is undoubtedly directed to our Supreme Court as Appellant "recognizes that this Court is not empowered to overturn the Pennsylvania Supreme Court's binding precedent." Commonwealth Brief at 35 (citing *Mutual Benefit Ins. Co. v. Politopoulos*, 75 A.3d 528, 534 (Pa. Super. 2013) ("We have no more authority than the trial court to overturn a prior decision of the Pennsylvania Supreme Court.")). Therefore, we will not entertain Appellant's third and fourth issues.

Order affirmed.

Judge Platt joins this opinion.

Judge Panella files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/18