# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1292 C.D. 2016 |
| | : | Submitted: October 14, 2016 |
| Paul J. Macolino, | : | |
| Appellant | : | |

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE COHN JUBELIRER                    FILED:  January 23, 2017

Paul J. Macolino appeals from the judgment of sentence issued by the Court of Common Pleas of Montgomery County (common pleas) that found him guilty of a summary offense for violating Section 305(a)(2) of the Dog Law[1] by not properly securing a dog (Dog) and imposing a fine of $300 plus costs.  On appeal, Macolino argues that common pleas erred in finding him guilty because the Commonwealth of Pennsylvania (Commonwealth) did not meet its burden of proving that he was the Dog's owner or keeper, that he acted intentionally,

---

[1] Act of December 7, 1982, P.L. 784, <u>as amended</u>, 3 P.S. § 459-305(a)(2) (making it unlawful for an "owner or keeper of any dog to fail to keep at all times the dog . . . firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured").

knowingly, or recklessly, or that he did not exercise reasonable control over the Dog. Discerning no error, we affirm.

On May 6, 2015, Detective John Pasqueal (Detective Pasqueal) of the Lower Moreland Township Police Department (Police Department) responded to a complaint about an unsecured dog on the property of Macolino's neighbor (Neighbor). After investigating, Detective Pasqueal issued a non-traffic citation to Macolino for violating Section 305(a)(2) of the Dog Law by "fail[ing] to keep [the Dog] confined within the premises of his residence, or fairly secured by means of collar and chain or other device so that it cannot stray beyond the premises on which it is secured." (R.R. at 5a.) At the de novo trial on the summary offense, the Commonwealth offered the testimony of Neighbor and Detective Pasqueal, and Macolino, who appeared pro se, testified in his own defense.

Neighbor testified that she was watering plants on her patio when, between 8:15 p.m. and 8:45 p.m. on May 6, 2015, a large dog came onto her patio, within a couple of inches of her person and scared her. Neighbor stated that Macolino came onto her property, she said "Paul" to him after the Dog came onto the patio, Macolino responded that she should go "F--- [her]self," Neighbor went into her home and called the police, and the Dog eventually returned to Macolino's property. (R.R. at 13a-14a, 16a-19a, 21a.) She recalled that the previous year the Dog appeared on her front porch and scared her. The Dog was not on a leash either time. Neighbor stated that the Dog was Macolino's daughter's boyfriend's dog, but that the Dog was frequently at Macolino's home. In all of the times she observed the Dog, it was never leashed. (R.R. at 13a-15a.)

Detective Pasqueal testified that he was dispatched to Neighbor's home on May 6, 2015, in response to an animal complaint and, after speaking to Neighbor,

2

he attempted to speak with Macolino. Macolino refused to speak with Detective Pasqueal about the incident. Upon review of the Police Department's records, Detective Pasqueal discovered that the police had discussed incidents involving dogs running loose in 2012 and 2014 with Macolino and that Macolino had been warned. Detective Pasqueal stated that he issued Macolino a citation for violating the Dog Law's provision related to the confinement of dogs. On cross-examination, Detective Pasqueal acknowledged that he was not aware whether the Dog was ever aggressive or had ever caused any property damage or bodily injury. (R.R. at 22a-24a, 30a-31a.)

Macolino testified that between 4:00 p.m. and 5:00 p.m., he and the Dog, which weighs about 60 pounds and is friendly, were playing on his property. While Macolino was bending over to clean up after the Dog, Neighbor came out of her home and made some noise. The Dog started to walk towards Neighbor and, after getting halfway to Neighbor, Macolino asked if Neighbor was "okay" with Dog and she told him to get the Dog off of her property. (R.R. at 35a.) Macolino stated that he then "immediately whistled, called the [D]og back, and [the Dog] turned immediately, never got anywhere near her, and ran back into [his] yard." (Id.) He said that hours later, around 9:00 p.m., the police came to his door to inquire about the incident, and he did not understand why this was happening because the Dog was "just walking on [Neighbor's] grass," was friendly, did not cause any property damage, or approach Neighbor aggressively. (R.R. at 36a.) Macolino explained that it was his son-in-law's dog, but that he accepted full responsibility for the Dog when it is on his property. According to Macolino, the intent of the Dog Law was to prevent dogs from roaming, and that this Dog was not roaming and is normally on a chain if Macolino or the Dog's owner are not

3

with it. Macolino further asserted that he should be exonerated because the Dog returned to his property when the Dog was called and, therefore, he had reasonable control of the Dog, as contemplated by Section 305(a)(3) of the Dog Law.[2] Macolino denied saying anything bad to Neighbor and stated that "when [Neighbor] instructed me to remove that [D]og, I acted immediately and that [D]og acted immediately. He listens to everything I say." (R.R. at 38a-39a.) On cross-examination, Macolino agreed that Neighbor was on her property when the Dog approached her and that the Dog was not on a leash. (R.R. at 34a-39a.)

At the close of the hearing, Macolino reiterated his assertions that the Dog did not go onto Neighbor's property until she made noise, he allowed the Dog to approach her hoping that she would pet the Dog and the Dog would then return, and when Neighbor told him to get the Dog off her property, Macolino called the Dog and it immediately returned. (R.R. at 40a-41a.) The Commonwealth argued that this was a matter of control, the Dog was not on a leash, and the Dog went onto Neighbor's property and surprised her. It asserted that Macolino's lack of control and confinement of the Dog, by not having it firmly secured by means of collar and chain or other device, violated Section 305(a)(2) of the Dog Law. In response to Macolino's claim that subsection (3), allowing for reasonable control, excused his actions, the Commonwealth argued, *inter alia*, that the Dog was not under reasonable control when the Dog crossed over into another person's property. (R.R. at 41a-42a.) Reviewing the evidence, the arguments, and the Dog Law, common pleas held that this matter "clearly [fell] within the prohibition of

---

[2] 3 P.S. § 459-305(a)(3) (making it unlawful for an "owner or keeper of any dog to fail to keep at all times the dog . . . under the reasonable control of some person, or when engaged in lawful hunting, exhibition, performance events or field training").

4

[the Dog Law]," found Macolino guilty of violating Section 305(a)(2), and fined him $300 plus the costs of prosecution. (R.R. at 43a.)

Macolino appealed and, at common pleas' direction, filed a Concise Statement of Errors Complained of on Appeal (1925(b) Statement) pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.[3] In the 1925(b) Statement, Macolino argued that common pleas

> . . . erred as a matter of law and/or abused its discretion when it did not dismiss [the] Commonwealth['s] . . . Non-traffic Citation # P9811013-2, citing [Macolino] with a violation of the . . . Dog Law . . . where the Commonwealth failed to establish that the accused acted intentionally, knowingly, or recklessly.

---

[3] Pa. R.A.P. 1925(b). Rule 1925 provides, in pertinent part, as follows:

**(a) Opinion in support of order.**
(1) *General rule.--* Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.
* * *
**(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.**--If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa. R.A.P. 1925(a), (b).

(1925(b) Statement ¶ 1.)  Common pleas issued an opinion in support of its Order, pursuant to Rule 1925(a), holding that the issue raised in Macolino's Statement was without merit[4] because

> [t]he Crimes Code's culpability requirements, 18 Pa. C.S.[] § 302 have no application to the Dog Law violation for which [Macolino] was convicted.  Specifically, 18 Pa. C.S.[] § 305(a)(2) provides: "The requirements of culpability prescribed by § 302 do not apply to: (2) the offenses defined by statutes other than this title insofar as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof, plainly appears."

(Common pleas Op. at 2.)  Common pleas cited the Superior Court's decision in Commonwealth v. Raban, 31 A.3d 699, 703 (Pa. Super. 2011) (Raban I), wherein that Court held that liability under Section 305(a)(1) of the Dog Law was not subject to the Crimes Code's culpability provisions because the language mandating the confinement of dogs was

> stated absolutely and not in the terms of reasonable care, which standard, as appreciated in B[a]ehr[ v. Commonwealth, 414 A.2d 415 (Pa. Cmwlth. 1980)], would involve difficulties in ascertaining culpability and thus frustrate the legislative intent behind Section

---

[4] Common pleas also asserts that the appeal should be quashed because Macolino did not provide it with a transcript as required by Rule 1911(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1911(a) (stating that "[t]he appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 5001 *et seq.* of the Pennsylvania Rules of Judicial Administration (court reporters)"), thereby hindering appellate review.  See Pa. R.A.P. 1911(d) ("If the appellant fails to take the action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal.")  However, we decline to quash the appeal because, notwithstanding the lack of transcript, common pleas was able to address the legal issue presented by the Statement and the transcript was subsequently provided.

6

305(a)(1). Had the legislature intended Section 305(a)(1) to condition culpability on the failure to make reasonable efforts at confinement, it could have easily stated so. As written, however, Section 305(a) unequivocally proscribes the failure to confine one's dog to one's premises, period.

(Common pleas Op. at 3 (quoting Raban I, 31 A.3d at 703).) Common pleas further noted that Raban I was affirmed by an equally divided Supreme Court, in which the Opinion in Support of Affirmance stated that "'[w]e find the statute's language denotes a purpose of imposing absolute liability, a purpose that 'plainly appears,' see [18 Pa. C.S.] § 305(a)(2), given the choice of the word 'fail,' a word that is unambiguous, and is utilized without mention or consideration of intent or excuse.'" (Common pleas Op. at 3 (quoting Com. v. Raban, 85 A.3d 467, 470 (Pa. 2014) (Eakin, J., Opinion in Support of Affirmance) (Raban II)).) Accordingly, common pleas asserted that it properly found Macolino guilty of violating Section 305(a)(2) of the Dog Law, and its judgment of sentence should be affirmed.

On appeal, Macolino argues that the Commonwealth did not meet its burden of proving all of the elements of a violation of Section 305(a) of the Dog Law. Section 305(a) of the Dog Law proscribes the following:

It shall be unlawful for the owner or keeper of any dog to fail to keep at all times the dog in any of the following manners:

(1) confined within the premises of the owner;

(2) firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured; or

(3) under the reasonable control of some person, or when engaged in lawful hunting, exhibition, performance events or field training.

3 P.S. § 459-305(a).  In Raban I, 31 A.3d at 703, and Commonwealth v. Glumac, 717 A.2d 572, 574 (Pa. Super. 1998), the Superior Court described the purpose of Section 305 of the Dog Law, stating:

> [t]he title of [Section 305] concisely explains that the principle purpose of the section is the "confinement of dogs."  In enacting this section of the Dog Law, the legislature intended to require dog owners to prevent their dogs from running at large.  See Miller v. Hurst, . . . 448 A.2d 614 ([Pa. Super.] 1982).  The protection of the public's health and safety are attained when dogs are safely secured or accompanied when not so confined.  See Baehr . . . 414 A.2d 415 ([Pa. Cmwlth.] 1980).

In determining whether sufficient evidence exists to support a conviction of a summary offense, we evaluate:

> whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

Com. v. Williamson, 616 A.2d 980, 981 (Pa. 1992) (quoting Com. v. Jackson, 485 A.2d 1102, 1103 (Pa. 1984)).

Macolino asserts that the Commonwealth did not meet its burden of proof, claiming that it is undisputed that he is not the owner or keeper of the Dog and, therefore, not absolutely liable under the Dog Law.  He argues that, because he is not an owner or keeper, he has no culpability unless the Commonwealth shows that he intentionally, knowingly, or recklessly allowed the Dog to leave his property.  For this reason, Macolino argues Raban I and Raban II do not apply because,

although they impose absolute liability for dog owners or keepers, they do not speak to the liability of non-owners or non-keepers of dogs.

Macolino further maintains that, although the Dog was not confined on his premises or chained or otherwise affixed to those premises, Section 305(a) "does not envision three separate crimes; it sets forth the elements of a single offense relating to the confinement of dogs[,]" all of which must be met before a person can be found guilty of violating the Dog Law. (Macolino's Br. at 15.) Here, Macolino asserts that he exercised reasonable control over the Dog as contemplated by Section 305(a)(3) because the Dog returned when Macolino whistled at him and, therefore, one of the subsections was not proven. According to Macolino, the requirement that he ("some person") was to exercise reasonable control was not triggered because the Dog did not escape its owner's (Macolino's son-in-law's) property. (Id. at 16.)

The Commonwealth responds that all of these issues are waived because they were not adequately identified in Macolino's 1925(b) Statement. It notes that where a 1925(b) Statement is vague or does not adequately identify "'the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.'" (Commonwealth's Br. at 4-5 (quoting Com. v. Seibert, 799 A.2d 54, 62 (Pa. Super. 2002) (internal quotations omitted)).) The Commonwealth asserts that common pleas addressed the one issue raised in the 1925(b) Statement, which was whether the Commonwealth failed to establish that Macolino acted intentionally, knowingly, or recklessly. The Commonwealth contends, however, that the additional legal errors Macolino now argues before this Court were not included in the issue raised in the 1925(b)

9

Statement and, therefore, they were not addressed by common pleas and are waived.

We begin by addressing the Commonwealth's assertion of waiver. After reviewing the 1925(b) Statement, we are constrained to agree with the Commonwealth that Macolino did not preserve any challenge beyond his claim that the Commonwealth did not prove that he "acted intentionally, knowingly, or recklessly." (1925(b) Statement ¶ 1.) The 1925(b) Statement does not assert: that the Commonwealth did not prove that he was the "owner" of the Dog; that the Commonwealth did not prove that Macolino did not exercise reasonable control over the Dog; or that all three subsections of Section 305(a) must be proven for the Commonwealth to establish Macolino's violation of the Dog Law. Because Macolino did not raise any of these issues in his 1925(b) Statement, they are, therefore, waived.[5]   Pa. R.A.P. 1925(b)(4)(vii) ("Issues not included in the

---

[5] Even if the issues were not waived, Macolino would not have prevailed on them. Section 102 of the Dog Law defines "owner" as, "[w]hen applied to the proprietorship of a dog, includ[ing] every person having a right of property in such dog, and *every person who keeps or harbors such dog or has it in his care, and every person who permits such dog to remain on or about any premises occupied by him.*" 3 P.S. § 459-102 (emphasis added). In Commonwealth v. Seyler, 929 A.2d 262, 265 (Pa. Cmwlth. 2007), we held that the term "owner" under the Dog Law is "broader than a person simply having a property interest in a dog." Here, Macolino testified that: "*we* take very good care of [the Dog]"; on the day in question, he was playing with the Dog in his yard and was cleaning up after the Dog when the Dog started to go towards Neighbor's property; he "*allow[ed]* the [D]og to go over" to Neighbor's property; the Dog *always* listens to him; and when the Dog is on his property, he "*accept[s] full responsibility for him. With no exceptions . . . .*" (R.R. at 35a-39a (emphasis added).) Neighbor testified that the Dog is frequently on Macolino's property. (R.R. at 15a.) This testimony is sufficient support for the trier of fact's finding, beyond a reasonable doubt, that Macolino kept or harbored the Dog, had it in his care, or "permit[ed the D]og to remain on or about any premises occupied by him," 3 P.S. § 459-102. We disagree with Macolino that this result would impose criminal liability on a person who exercises only incidental control over a dog, such as a person "merely petting a dog." (Macolino's Br. at 10-11.) Macolino was not merely petting the Dog, and his testimony demonstrates that he exercised more than "incidental" control over the Dog.

*(Continued…)*

10

Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Com. v. Lord, 719 A.2d 306, 309 (Pa. 1998) ("In order to preserve . . . claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement . . . pursuant to Rule 1925" and "[a]ny issue not raised in a 1925(b) statement will be deemed waived."). Therefore, we can only address the issue preserved in this appeal, which is whether common pleas erred as a matter of law in not dismissing the citation because "the Commonwealth failed to establish that [Macolino] acted intentionally, knowingly, or recklessly." (1925(b) Statement ¶ 1.)

In Baehr, this Court examined the predecessor to Section 305(a) of the Dog Law,[6] the language of which was nearly identical to the current law, and explained that these provisions

---

With regard to Macolino's argument that each of the three subsections of 305(a) are elements of a single crime, which all must be met before a violation occurs, the plain language of Section 305(a) does not support this argument. That section, titled "Confinement and control," in relevant part, makes it a crime where "the owner or keeper of any dog . . . fail[s] to keep at all times the dog in *any of the following manners*: (1) confined within the premises of the owner; (2) firmly secured . . . so that it cannot stray beyond the premises on which it is secured; *or* (3) under the reasonable control of some person . . . ." 3 P.S. § 459-305(a) (emphasis added). The list of three standards are connected by the conjunction, "or," and as such, they are alternatives.

Therefore, it is irrelevant whether Macolino exercised reasonable control of the Dog. He was charged with violating Section 305*(a)(2)* by failing to keep the Dog "firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured," 3 P.S. § 305(a)(2), and because he is an owner and not all three subsections must be proven to establish a violation, we will not address Macolino's arguments pertaining to Section 305(a)(3).

[6] Former Section 702 of the Dog Law, Act of December 22, 1965, P.L. 1124, as amended, *formerly* 3 P.S. § 460-702, repealed by Section 1205(a) of the Act of December 7, 1982, P.L. 784. Section 702 contained nearly identical language except that subsection (a)(3) stated "under the reasonable control of some person, or when engaged in lawful hunting or field training accompanied by an owner or handler." Id.

> unmistakenly speak[] in terms of strict liability for its violation, and a moment's reflection on the purpose of the statute buttresses our conclusion. "The reasons for sustaining legislation which makes certain acts crimes and punishable as such without regard to [a] defendant's motive, intent, reasonableness or good faith, are . . . (1) [t]o require a degree of diligence for the protection of the public and (2) convenience of enforcement." Com[.] v. Fine, . . . 70 A.2d 677, 679 ([Pa. Super.] 1950). The difficulty of establishing culpability in such cases would surely frustrate the purpose of Section [305(a)].

Baehr, 414 A.2d at 417. This Court thus concluded, in Baehr, that "[a]n examination of the Dog Law makes it clear that *scienter is not a necessary element* of a violation." Id. (emphasis added). Macolino acknowledges that Raban I imposes absolute liability on dog owners, (Macolino's Br. at 11), and this includes, under the Dog Law's definition of owner, those who keep or care for a dog or allow a dog to remain on or about the premises occupied by the person, 3 P.S. § 459-102. The Opinion in Support of Affirmance in Raban II, compared Section 305(a)(1) to Section 504-A of the Dog Law,[7] which makes it a crime for an owner or keeper of a "dangerous dog" "'to *permit* the dog' to be outside the proper enclosure," and explained that

> [t]here is a significant difference between *permitting* a dangerous dog to be outside – clearly involving an intent element – and *failing to confine* a dog, bespeaking nothing but absolute liability. Had the legislature wanted to make § 305(a)(1) a crime of intent, it would have made it illegal to *permit* any dog to be unconfined. Section 504-A demonstrates that the legislature knew how, and chose not, to do so.

Raban II, 85 A.3d at 471 (quoting 3 P.S. § 459-504-A (emphasis added)) (footnotes omitted).

---

[7] Added by Section 2 of the Act of May 31, 1990, P.L. 213, as amended, 3 P.S. § 459-504-A.

12

Like subsection (a)(1) of the Dog Law, which was analyzed in Baehr and Raban I and Raban II, subsection (a)(2) "speaks in clearly obligatory terms – 'It *shall be unlawful* for the owner or keeper of any dog to *fail* to keep at all times' the dog" "firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured." Raban II, 85 A.3d at 470 (quoting 3 P.S. § 459-305(a)); 3 P.S. § 459-305(a)(2). Section 305(a)(2) is stated in no less absolute terms than Section 305(a)(1) and, therefore, we are persuaded by this Court's rationale in Baehr, the Superior Court's rationale in Raban I, and the Opinion in Support of Affirmance in Raban II, and conclude that Section 305(a)(2) likewise imposes absolute liability.

As discussed, Macolino waived any challenge to whether he should be considered an owner or keeper of the Dog, although his testimony regarding the frequency of the Dog's visits to his property, his care of the Dog, his control over the Dog, and his acceptance of full responsibility for the Dog when the Dog was on his property would support such a finding. (R.R. at 35a-39a.) Neighbor testified that the Dog was not secured and that it came onto her property within inches of her person. (R.R. at 14a, 17a.) Macolino acknowledged that the Dog was not confined or kept secured on his premises and that it strayed off of the premises. (R.R. at 38a-39a; Macolino's Br. at 12.) This evidence supports the trial court's finding, beyond a reasonable doubt, that Macolino "fail[ed] to keep at all times the [D]og . . . firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured" in violation of Section

13

305(a)(2) of the Dog Law.[8]   Accordingly, common pleas did not err in finding Macolino guilty of violating that provision of the Dog Law.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[8] Even if scienter was required for a violation of Section 305(a)(2), the facts developed at trial reveal that Macolino:  had been warned by the Police Department in 2012 and 2014 against allowing dogs to roam from his property unsecured and, therefore, was aware that this conduct was not permitted; allowed the Dog to be unsecured on his property on May 6, 2015; allowed the Dog to leave his property and enter Neighbor's property; and did nothing to prevent the Dog from leaving his property.  (R.R. at 23a, 25a, 35a-36a, 38a-39a.)

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
                                :
                    v.          :    No. 1292 C.D. 2016
                                :
Paul J. Macolino,               :
                    Appellant   :

# **O R D E R**

NOW, January 23, 2017, the judgment of sentence entered by the Court of Common Pleas of Montgomery County, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge